IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR682 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID JOHNSON, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Michelle M.
Baeppler, First United States Attorney, and Kelly L. Galvin and Margaret A. Kane, Assistant
United States Attorneys, pursuant to the Court's Trial Order of May 5, 2020, submits this trial
brief summarizing the facts and evidentiary issues that will be presented by the government at
trial.

## I.      PROCEDURAL BACKGROUND

On October 22, 2020, a federal grand jury, in the Northern District of Ohio, returned a 9-
count indictment charging David Johnson ("Johnson") for a series of gas station and retail store
robberies and related firearm offenses which occurred from November 27, 2019, through January
25, 2020.  Counts 1 and 2 relate to events that occurred on November 27, 2019, at the Sunoco
Gas Station located at 940 East 222nd Street, Euclid, Ohio.  Counts 3 and 4 involve events that
occurred on January 18, 2020, at the BP Gas Station located 16220 Main Market Street,
Parkman, Ohio.  Counts 5 and 6 relate to events that occurred on January 18, 2020, at the Dollar
General store located at 11180 Chardon Road, Chardon, Ohio.  Counts 7 and 8 involve events

that occurred on January 25, 2020, at the Gas Mart gas station and convenience store located at 21820 Lakeshore Boulevard, Euclid, Ohio. Count 9 charges conduct which occurred on January 27, 2020, at Johnson's residence on the day he was arrested for these crimes.

Johnson is charged in Counts 1, 3, 5, and 7 with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). Johnson is further charged in Counts 2, 4, 6, and 8 with Use, Carry, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Lastly, Johnson is charged in Count 9 with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

## II. STATEMENT OF THE CASE

On November 27, 2019, one armed male robbed the Sunoco gas station and convenience store located at East 222nd Street, Euclid, Ohio. The black male entered the store and brandished a firearm at the clerk, who provided cash to the robber. Euclid Police obtained a description of a younger black male wearing a black hoodie, a skull mask, blue and grey work gloves, armed with a two-toned silver and black handgun. The suspect was last seen running west on Miller Avenue. The robbery was captured on store surveillance video.

On January 18, 2020, the BP gas station located at 16220 Main Market Street in Parkman, Ohio, was robbed by a black male in a grey sweat suit, black ski mask, and two-toned silver and black handgun. The robber entered the store, brandished the handgun, and demanded money. When he entered the store, the robber was dragging another employee into the store at gunpoint. Store surveillance footage shows the assailant wearing a grey sweat-suit, brown boots with a small black area along the upper, blue/grey gloves, a skull mask, and a two-toned silver and black handgun.

2

On January 18, 2020, the Dollar General located at 11180 Chardon Road, Chardon, Ohio, was robbed. The employee reported a black male had entered the store wearing grey sweats, gloves, black skull mask, and brandished a silver handgun at her. During the robbery, the assailant demanded money and threatened to shoot her. The victim was shown surveillance footage from the robbery of the BP gas station located at 16220 Main Market Street, which occurred earlier that day, and immediately recognized the person in the surveillance video as the person who had robbed her.

On January 25, 2020, the Gas Mart, located at 21820 Lakeshore Boulevard, Euclid, Ohio, was robbed by a black male wearing a dark jacket or sweatshirt, black sweatpants with a Puma logo, black sneakers, gloves, and a silver handgun which was brandished at multiple victims. Surveillance footage captured the robbery and above description of the suspect.

Members of law enforcement from Euclid Police Department (Cuyahoga County), Geauga County Sheriff's Office and Lake County Sheriff's Office[1] were all simultaneously investigating the robberies that occurred in their respective jurisdictions. Witnesses from the above robberies observed the suspect fleeing in a gold Kia SUV style vehicle. Law enforcement began to investigate this vehicle to learn the suspect's identity. Officers learned that a gold/copper 2020 Kia Sportage bearing Ohio registration HVY3339 was stolen from Willoughby Hills, Ohio, on November 28, 2019 and an Ohio temporary license plate bearing registration

---

[1] The Defendant was convicted of multiple counts of aggravated robbery with firearm specifications, kidnapping, having weapons while under disability, and theft, in Case Number 20CR00857, in Lake County Court of Common Pleas, and was sentenced to 47 years in prison on December 6, 2021. The government will not mention these convictions and witnesses will be instructed accordingly.

K061914 was stolen in Cleveland, Ohio, on January 2, 2020.   On January 4, 2020, an armed robbery occurred near 3702 Stickney Avenue, Cleveland, Ohio, during which the subject, reportedly driving a gold-colored Kia Sportage, robbed the victim of a wallet, $80.00, and debit and credit cards.[2]  Shortly after the robbery occurred on the same date, the victim's credit card was used to purchase gasoline at the BP located at East 9th Street and Carnegie Avenue, Cleveland, Ohio.  When law enforcement spoke to the BP employee, he recalled that the person that made this purchase was driving a gold Kia SUV.

On January 24, 2020, the same employee of the BP Gas Station at East 9th Street and Carnegie Avenue observed the same distinct gold Kia Sportage that he previously observed on January 4, 2020, return to the gas station.  The employee noted the make, model, year, color, and rims matched the January 4, 2020, incident.  The employee captured the registration on the vehicle as Ohio temporary K061914.

Investigators received a short video clip of the driver of the gold-colored Kia Sportage from the January 24, 2020, incident which showed a tall black male enter the store.  FBI Agents sent the video clip to several law enforcement partners requesting their assistance in identifying the person in the video.  United States Probation Officer Jennifer Truxall notified Agents that she believed the subject in the video to be one of her probationers, David Johnson, whose listed probation address was 21920 Miller Avenue, Euclid, Ohio.

On January 27, 2020, officers and agents conducted surveillance at the Miller Avenue address and located the stolen 2020 Kia Sportage, with Ohio temporary registration K061914 at

---

[2] There is no federal jurisdiction over the robbery of this individual.

the home.  David Johnson was arrested for Receipt of Stolen Property.  Johnson's girlfriend, the lessee residing at 21920 Miller Avenue, provided written consent to search the premises to both the Euclid Police Department and Lake County Sheriff's Department.  Two cellular phones were seized from Johnson during the arrest, along with the following items of clothing, matching clothing seen in surveillance videos, with the dates and incident noted:

    a. From November 27, 2019, robbery of Sunoco, Euclid, OH:  a black "Jack Skellington" style skull mask, pair of blue/grey of Memphis Flex work gloves ;

    b. From January 18, 2020, robberies of BP in Parkman, Ohio and Dollar General, Chardon Township, Ohio: LaCoste zip hooded sweatshirt, LaCoste sweatpants, Timberland pro work boots with salt on bottom, Timberland pro work boots without salt on bottom, gloves, mask;

    c. From January 24, 2020, return to BP: Superdry Brand hooded sweatshirt, Gucci Buckle Belt, G-Star raw denim jeans;

    d. From January 25, 2020, robbery of Gas Mart, Euclid, Ohio: winter jacket, Puma sweatpants, Nike low-top shoes, gloves;

    e. A silver and black Taurus G2C .40 semi-automatic pistol was recovered which is consistent with the firearm observed on surveillance video of all four robberies.

Following his arrest, the Defendant was Mirandized.  The Defendant stated, "You all can't help me, I'll be an armed career criminal in front of Judge Boyko."[3]  Law enforcement also searched the phones seized from Johnson when arrested.  A search warrant for one phone revealed that David Johnson used Google account kevinjeffries82@gmail.com.  A subsequent search warrant to Google for GPS information from the above account showed Johnson near the scenes of the robberies committed on January 18th and January 25th.  Cell tower mapping also places Johnson near the scene of the charged robberies.  Law enforcement also obtained records from Johnson's Instagram account and observed him wearing the distinctive clothing used in the

---

[3] Johnson is currently on supervised release in 1:15CR277, Being a Felon in Possession of a Firearm, from a 2016 conviction in front of Judge Christopher Boyko.  Johnson served 24 months in prison.

robberies in photographs on his account.

Johnson has two prior convictions which prohibit him from possessing the firearm recovered from his residence on January 27, 2020. These include Felon in Possession of a Firearm, on or about February 23, 2016, in Case Number 1:15CR277, in the Northern District of Ohio, Eastern Division; and Involuntary Manslaughter with firearm specification and Aggravated Robbery with firearm specification, on or about October 13, 2005, in Case Number CR-05-465697, in Cuyahoga County Common Pleas Court. Prior to Johnson possessing the firearm on January 27, 2020, the firearm had moved in and affected interstate commerce.

## III. CONTROLLING LAW

### A.    Interference with Commerce by Means of Robbery (Counts 1, 3, 5, 7)

Title 18, United States Code, Section 1951(a), Interference with Commerce by Means of Robbery, provides:

> "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . .

shall be guilty of an offense against the United States. 18 U.S.C.§ 1951(a). To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

(1)    That the defendant unlawfully took personal property from someone, against that person's will.

(2)    That the defendant did so by actual or threatened force, or violence, or fear of injury to the person or person in her company at the time of the taking.

(3)    That the defendant did so knowingly.

(4)     That as a result, interstate commerce was affected in any way or degree.

Sixth Circuit Pattern Jury Instruction, 2019 Edition, Section 17.03.

**B.     Using or Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence (Counts 2, 4, 6, 8)**

Title 18, United States Code, Section 924(c)(1)(A)(ii) makes it a crime for a person to use or carry, and brandish a firearm during and in relation to a crime of violence and states:

> "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence. . . or (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years"

18 U.S.C. § 924(c)(1)(A)(ii). The government must prove the following elements beyond a reasonable doubt:

(1)     That the defendant committed the crime of Interference with Commerce by Means of Robbery as charged in Counts 1, 3, 5, and 7.  Interference with Commerce by Means of Robbery is a crime of violence which may be prosecuted in a court of the United States;

(2)     That the defendant knowingly used or carried a firearm;

(3)     That the use or carrying of the firearm was during and in relation to the crime of Interference with Commerce by Means of Robbery as charged in Counts 1, 3, 5, and 7.

The jury will separately be asked to find whether the defendant brandished a firearm.

Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition, Sections 2.02, 4.01, 12.02

To establish "use," the government must prove active employment of the firearm during and in relation to the crime of Interference with Commerce by Means of Robbery as charged in Counts 1, 3, 5, and 7. "Active employment" means activities such as brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. "Use" also

7

includes a person's reference to a firearm in his possession for the purpose of helping to commit the crime charged in Counts 1, 3, 5 and 7. "Use" requires more than mere possession or storage. "Carrying" a firearm includes carrying it on or about one's person.

The term "during and in relation to" means that the firearm must have some purpose or effect with respect to the crime charged in Count 1; in other words, the firearm must facilitate or further, or have the potential of facilitating or furthering the crime charged in Count 1, and its presence or involvement cannot be the result of accident or coincidence.

The term "knowingly" means voluntarily and intentionally, and not because of mistake or accident.

The term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.[4] See also Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition, Sections 2.02, 4.01, 12.02.

### C. <u>Felon in Possession of a Firearm (Count 9)</u>

Title 18, United States Code, Section 922(g)(1), provides:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess in or affecting commerce, any firearm or ammunition….

18 U.S.C.§ 922(g)(1).

To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

---

[4] *See* <u>Rosemond v. United States</u>, 134 S. Ct. 1240 (2014); 18 U.S.C. § 924(c)(4) (defining brandishing)

    (1)       That the defendant had been convicted of a crime punishable by imprisonment for more than one year;

    (2)       That the defendant, following his conviction, knowingly possessed the firearm and/or ammunition specified in the Indictment;

    (3)       That at the time the defendant possessed the firearm and/or ammunition, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

    (4)       That the specified firearm and/or ammunition crossed a state line prior to the alleged possession.

Sixth Circuit Pattern Jury Instruction No. 12.01, 2017 Edition; *United States v. Kincaide*, 145 F.3d 772, 782 (6th Cir. 1998). *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019).

## IV.    MISCELLANEOUS TRIAL AND EVIDENTIARY MATTERS

The United States does not anticipate any unique or complex legal issues to arise during the trial.

### A.    <u>Admissibility of Duplicates and Photocopies</u>

Copies of reproductions or reprints are admissible to the same extent as originals whether the original is in existence or not. 28 U.S.C. § 1732(b) (Federal Business Record Act). Therefore, such reproductions are admissible in the same manner as the originals. <u>United States v. Carroll</u>, 860 F.2d 500, 507 (1st Cir. 1988) (microfilm of checks is admissible); <u>United States v. Saputski</u>, 496 F.2d 140, 141 (9th Cir. 1974); <u>Williams v. United States</u>, 404 F.2d 1372, 1373 (5th Cir. 1968).

The Government intends to admit documents as evidence which are duplicates and photocopies of original documents. Rules 1001 and 1003 govern the admissibility of duplicate documents. Federal Rule of Evidence 1004 states, "[a] duplicate is admissible to the same extent as an original unless (1) genuine question is raised as to the authenticity of the original or (2) in

the circumstances it would be unfair to admit the duplicate in lieu of the original."

**B.     Computer-assisted Presentation of Evidence**

To maximize efficiency, the Government intends to present evidence through the Courts electronic presentation system, using Trial Director software.  With the Court's permission, the government intends to determine if defendant objects to any exhibits prior to trial commences. Counsel for the government will only ask the Court to publish those exhibits to the jury during a witness' testimony if defendant has agreed the exhibit is admissible without objection.

**C.     Use of Summary Charts to Present Voluminous Information**

During the investigation, the ATF, FBI, and local law enforcement received numerous court orders for cellular telephone records, email account, and social media records of Johnson. Rather than admit the voluminous records provided by the cellular phone provider or social media company,  Federal Rule of Evidence 1006 permits for such use of summary charts, by providing that "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  The use of summary materials has been approved by the Sixth Circuit.  *See* United States v. Bray, 139 F.3d 1104, 1112 (6th Cir. 1998).  The Government will also include in its proposed jury instructions, the Sixth Circuit's pattern jury instruction 7.12.

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing numerous exhibits into a PowerPoint presentation summarizing the records.  For each summary chart the Government anticipates using at trial, the Government has complied with Rule 1006 by providing the underlying documents to Defendant and/or making the underlying documents available for examination and

copying in advance of the Court's discovery deadline. Furthermore, the Government will provide the exhibits to Defendant in advance of trial.

###    D.    Authentication of Facebook/Instagram, T-Mobile, and Google Records

In this case state search warrants were obtained for Johnson's Facebook/Instagram account, Google/Gmail account records, T-Mobile cellular telephone records to include cell tower data, and to conduct extractions (download of content) on Johnson's cellular phone. FBI Special Agent William Hasty and Detective Humar of the Geauga County Sheriff's Office performed the extraction of Johnson's phone. Detective Human analyzed the contents of the phone extraction report. Detective Humar and/or Agent Hasty will testify to the extraction process and the data they extracted from Johnson's phone. All of the data was provided to defense counsel through discovery well in advance of trial. The government has extracted very limited but relevant portions from these documents and will label the portions the government intends to use as exhibits which will be provided to defense pursuant to this Court's trial order.

The government submits the testimony of representatives from Facebook and/or Instagram (both owned by Facebook), T-Mobile, and Google are unnecessary to introducing the records pursuant to Federal Rules of Evidence 901 and 902. Such witnesses would do nothing other than authenticate records. Facebook (Instragram), T-Mobile, and Google have all certified that the records provided are authentic and comply with FRE 901(a) requirements. These certification pages from each provider have all been provided to defense counsel previously in discovery and will be labeled as exhibits for trial.

The records at issue will still be subject to challenge by defense on the basis of hearsay and relevance. *See* Fed. R. Evid. 902(13), Advisory Committee's Note (2017) ("A certification under this Rule can establish only that the proffered item has satisfied the admissibility

requirements for authenticity. The opponent remains free to object to admissibility of the proffered item on other grounds . . . ."); <u>Kalamazoo River Study Grp. v. Menasha Corp.</u>, 228 F.3d 648, 661 (6th Cir. 2000) ("Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity.")

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). The government purports the items at issue to be: (a) records associated with particular online accounts (e.g., particular Facebook and Instagram accounts, T-Mobile records, Google records); and (b) cell phone extraction data from cellular phones recovered by law enforcement).[5]

Federal Rule of Evidence 902 addresses "evidence that is self-authenticating." FRE 902. "No extrinsic evidence of authenticity" is required for this evidence "to be admitted." *Id.* Courts

---

[5] "This burden [under Rule 901] is slight." *United States v. Demjanjuk*, No. 1:99CV1193, 2002 WL 544622, at *21 (N.D. Ohio Feb. 21, 2002), *supplemented*, No. 1:99CV1193, 2002 WL 544623 (N.D. Ohio Feb. 21, 2002), and *aff'd*, 367 F.3d 623 (6th Cir. 2004). "[T]here need only be a *prima facie* showing, to the court, of authenticity, not a full argument on admissibility." *Id.*; *see also United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) ("Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury." ); Hon. Paul Grimm, Gregory Joseph & Daniel Capra, *Best Practices for Authenticating Digital Evidence*, pp. 2-3, West Academic Publishing (2016) (describing the roles of the trial court and jury). "Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court." *United States v. Thomas*, 921 F.2d 277 (6th Cir. 1990) (citations omitted). "The only requirement is that there has been substantial evidence from which they could infer that the document is authentic." *Id.*; *see also United States v. Carriger*, 592 F.2d 312, 316 (6th Cir. 1979) (concluding "that the district court erred in requiring further authentication of the promissory notes")

in the Sixth Circuit regularly admit self-authenticating evidence pursuant to Rule 902 without any witness testimony. *See, e.g., Gjokaj v. United States Steel Corp.,* 700 F. App'x 494, 502 (6th Cir. 2017) (finding "a business record certified by a qualified witness" to be "self-authenticating" under FRE 902(11)); *Savage v. Fed. Express Corp.,* 856 F.3d 440, 451 (6th Cir. 2017), *reh'g denied* (July 26, 2017) ("a document is deemed self-authenticated under Federal Rule of Evidence 902(7) when it is presented on company letterhead."); *Byrne v. CSX Transp., Inc.,* 617 F. App'x 448, 452 (6th Cir. 2015) ("though the chain of custody of the Conrail invoices is unclear from the record, the invoices bear Conrail logos and so the district court could properly determine them to be self-authenticating under Fed. R. Evid. 902(7)."); *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 582 (6th Cir. 2014), *as amended* (July 2, 2014) (affirming district court's admission of a spreadsheet "as a self-authenticating business record under Federal Rule of Evidence 902(11)"). These provider records certified pursuant to FRE 902(11) are *prima facie* authentic and therefore the Facebook/Instagram, T-Mobile, and Google providers need not appear at trial.

### E. 911 Calls

The Government intends to play 911 calls placed by victims from each of the robberies. Statements taken by police officers in the course of an interrogation are "nontestimonial" and not subject to the Confrontation Clause, when made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Davis v. Washington, 547 U.S. 813 (2006). See also United States v. Arnold, 486 F.3d 177 (6th Cir. 2007). These calls are admissible both as excited utterances and present sense impressions. Id. See also United States v. Davis, 577 F.3d 660 (6th Cir. 2009).

The phone calls placed by victims and witnesses were placed during or immediately following the startling event of being robbed. The calls describe the events that the witnesses observe as they unfold. The purpose of the calls were to enable police assistance to meet an ongoing emergency. The 911 calls are admissible under multiple hearsay exceptions and are not subject to the Confrontation Clause.

## F.     Expert Witness Testimony

The government potentially intends to call six witnesses to offer expert opinions. One of these witnesses is Karen Zavarella of the Lake County Crime Lab. Ms. Zavarella conducted DNA testing on the firearm, gloves, and black knit hat recovered from Johnson's residence. Her testing concluded that Johnson's DNA was recovered from the black knit hat and that the DNA on the firearm and gloves were incomplete mixtures. Ms. Zavarella will explain what a mixture means and that this finding does not mean that Johnson's DNA is not on these items or that he did not touch the items. Ms. Zavarella's testimony will include background information on what DNA is and how it is transferred from a person to an object. She will testify to the results of her analysis, which are reflected in the lab report provided in discovery.

The government also plans to call David A. Green, another analyst with the Lake County Crime Lab. Mr. Green compared hairs recovered from the work gloves and black knit hat/mask recovered from Johnson's residence which are consistent with items seen in surveillance videos of the robberies. Mr. Green will opine that Johnson's known hair samples cannot be eliminated as the possible source of hair and hair fragments found on the knit hat and gloves.

The government may also additionally call Nathan R. Carey, an analyst with the Lake County Crime Lab, who conducted footwear impression comparisons to shoe prints left at one

14

robbery scene to shoes recovered from Johnson's residence. Mr. Carey made comparisons to two different pairs of shoes recovered from Johnson's residence and issued a written report which was provided in discovery. Counsel for the government is still in the process of reviewing this report and plans to review Mr. Carey before making a final determination if he will be called to testify at trial.

ATF SA Corey Miles will testify that he examined the firearm recovered and concluded that the Taurus, Model PT 24/7 G2C .40 caliber semi-automatic pistol, bearing serial number SEU91771, had been shipped and transported in interstate commerce. Specifically, he will testify that the firearm was manufactured by Taurus Forjas, in Brazil, and imported by Taurus International Mfg., in Miami, Florida. It was further determined that the weapon meets the definition of a firearm under federal law.

Detective Steven Veverka of the Cuyahoga County Sheriff's Department will testify that he compared the fingerprints from Johnson's prior convictions listed in the indictment (CR-05-465697, and 1:15CR277) to his arrest in the current case. Detective Veverka will opine that the fingerprints from the prior arrests and the current arrest appear to be from the same individual, David Johnson.

The government also plans to call FBI CAST examiner Jacob Kunkle. Agent Kunkle analyzed cell tower data to show Johnson's location on the dates of the robberies. A formalized report will be completed will in advance of trial and provided to defense counsel along with Agent Kunkle's curriculum vitae.

To date, Johnson has not informed the government of any challenges he has to these experts, or any experts he intends to call in his defense. An additional notice in compliance Rule

16(a)(1)(G) of the Federal Rules of Criminal Procedure will be filed well in advance of trial. Curriculum vitae of these experts have been or will be provided in discovery well in advance of trial. Should the Defendant agree to any proposed stipulations, the testimony of SA Cory Myles and Detective Steven Veverka would no longer be necessary.

### G.  Defendant's Self-Serving Exculpatory Statements

It is well-settled that defendants cannot seek to introduce their own self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). Indeed, while the Federal Rules of Evidence allow the government to introduce inculpatory statements made by a defendant, the "Rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.* Thus, while the government is permitted to introduce some or all of a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule.

This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses. Because the government may be introducing portions of the defendant's statements, primarily in the form of video recorded interviews with law enforcement, it anticipates that the defendant may seek to introduce other portions of the videos into evidence pursuant to Rule 106. The "rule of completeness," however, does not override the prohibition from admitting self-serving, exculpatory statements. *Gallagher*, 57 Fed. Appx. at 628-29. The "completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be

excluded." *Id.*, *quoting Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999); *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). If the government were seeking to mislead the jury regarding the actual meaning of one of the defendant's admissions, the completeness doctrine might be implicated. That, however, is not the case here.

### H.    Inextricably Intertwined Evidence

Rule 404(b) "does not apply to evidence that itself is probative of the crime charged[.]" United States v. Price, 329 F.3d 903, 906 (6th Cir. 2003). Such probative proof includes "intrinsic acts" evidence that relates to those acts that "were necessary preliminaries to the crime charged." United States v. Daulton, 266 F. App'x 381, 384 (6th Cir. 2008) (citation omitted). Furthermore, even if the evidence at issue relates to a defendant's uncharged criminal conduct, the evidence still is admissible if the conduct "arises from the same events as" and "is directly probative of [defendant's] charged offense[.]" United States v. Clay, 667 F.3d 689, 698 (6th Cir. 2012).

Rule 404(b) does not apply where the challenged evidence is "inextricably intertwined" with evidence of the crime charged in the indictment. When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts on the other hand, are those that are part of a single criminal episode. United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995) (citing United States v. Torres, 685 F.2d 921, 924 (5th Cir. 1982)). Evidence relating to the background of the charged offense, known as "***res gestae*** evidence," is also considered "intrinsic" and admissible, meaning the court would not undertake a Rule 404(b) analysis: "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a

17

prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." United States v. Hardy (Marlando), 228 F.3d 745, 748 (6th Cir. 2000).

Facts and circumstances of the investigation leading up to the search of a residence is clearly background evidence and has a purpose to put the charges in the appropriate context. United States v. Gibbs, 797 F.3d 416, 424 (6th Cir. 2015). Evidence about the investigation explains to a jury how and why the police came to be at a defendant's residence in the first place. See United States v. Gibbs, 506 F.3d 479, 484 (6th Cir. 2007) (holding testimony about a burglary investigation was admissible in a felon-in-possession case to show how the investigation led to the defendant).

In Gibbs, 506 F.3d 479 (6th Cir. 2007), multiple law enforcement officers were permitted to testify that police were investigating a series of home invasions and police identified two men from the video surveillance. This led officers to Gibbs' home to question him where they then found a firearm. The Sixth Circuit found that this testimony was relevant background information offered to show how the investigation led police to the defendant's home. The evidence also provided context for the defendant's admission.

Similarly, testimony of how the investigation led police to identify Johnson and to his home is relevant evidence to provide context to the jury. The four robberies charged in the indictment occurred along with other robberies that led to Johnson's identification. Testimony of the January 4th robbery and the use of the victim's credit card at the BP gas station with the Kia vehicle and Johnson's return to the same gas station on January 24, 2020, show how police

obtained a plate for the vehicle used in the robberies and a picture of Johnson. This explains

what information was sent out by law enforcement and how probation officer Truxull was able to

identify Johnson from store surveillance footage. As in <u>Gibbs</u>, this information is all relevant as

to how the investigation of related robberies led to Johnson's identification and arrest.

I.    **Stipulations**

      The Government and Defendant do not anticipate entering into any stipulations. The

Government has attempted to obtain stipulations related to authenticating business records,

interstate nexus, and prior conviction for a crime punishable by more than one year

imprisonment. It is the Government's understanding that the Defendant does not wish to agree

to any stipulations.

      If Johnson declines to stipulate to having a prior felony conviction and having knowledge

of his status as a felon, the government intends to prove those elements by introducing certified

copies of his prior convictions. <u>See</u> <u>United States v. Johnson</u>, 803 F.3d 279 (6th Cir. 2015)

(district court did not err in allowing government to introduce defendant's prior felony

convictions in 922(g) trial since defendant declined to stipulate to that element). Fed. R. Evid.

902(4) provides in pertinent part that "no extrinsic evidence of authenticity" is required in order

to admit certified copies of public records if the copy is certified as correct by "the custodian or

another person authorized to make the certification." Here, each record of conviction is certified

as true and accurate by the Cuyahoga County Clerk of Courts. As such the evidence of

Defendant's prior convictions are admissible as self-authenticating public records.

      As to the issue of whether or not Defendant knew that he had been convicted of a crime

punishable by more than one year in prison, the government will follow *Old Chief* and stipulate

if Defendant agrees to do so. *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 655-656 (1997). However, if the Defendant does not agree to stipulate to his knowledge of his status as a prohibited from possessing a firearm, the government intends to offer a "Certificate of Incarceration" from the Ohio Department of Rehabilitation to show that Defendant served more than one year in prison to show that he had knowledge he had been convicted of a crime punishable by more than one year in prison. This document will be provided to defense counsel in discovery and would also be a self-authenticating public record using the same rationale as described above. As an alternative, the government will prove this fact through the testimony of federal probation officer Jennifer Truxull who is familiar with Johnson's prior convictions and time he served in prison for each.

Should the Defendant decide not to stipulate and the documents listed above are admitted, the Government would then ask that the Court provide a cautionary instruction to the Jury stating that these documents are only offered for the purpose of deciding whether the defendant was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and had knowledge of that conviction. The jurors should be specifically instructed that they are not to consider it for any other purpose.

### J. **Jury Instructions**

Joint Proposed Jury Instructions of both parties were filed as a separate document on June 28, 2022.

## V. **COURTROOM PROCEDURE**

### A. **Jencks material**

The United States will provide *Jencks* material to the defense in a timely manner and in accordance with this Court's Order.

**B**.        <u>**Length of Trial**</u>

The Government anticipates its case-in-chief to last approximately 7-10 days subject to defense counsel's cross-examinations and willingness to enter into stipulations. The Government will submit its witness list, currently comprised of approximately 50 witnesses by the Court's August 28th deadline. This list is over inclusive and includes any witness the Government may call. However, as the trial date becomes closer the Government will submit a revised witness list when more detailed trial preparation can occur. The Government anticipates that it will call between 20-30 witnesses for trial.

**C**.        <u>**Sequestration Of Witnesses & Presence Of Government Agent At Trial**</u>

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615. The government designates Agent Adam Lane with the Bureau of Alcohol, Tobacco, and Firearms (ATF) or Broderick Sellers with the Federal Bureau of Investigation (FBI) as its representatives in this case and for one to be present at counsel table throughout the trial. Both agents investigated and assisted in this investigation. One of these agents will be present at counsel table throughout the trial depending on their availability for the November trial date. Their presence in the courtroom during trial is essential to the presentation of the government's case. *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after

being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing

an additional exception for essential witnesses).

                                        Respectfully submitted,
                                          MICHELLE M. BAEPPLER
                                          First Assistant United States Attorney

By:   Margaret A. Kane (OH: 0082084)
        Margaret A. Kane (OH: 0082084)
        Kelly L. Galvin (OH:  0062585)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3624/(216) 622-3731
        (216) 522-7358 (facsimile)
        Margaret.Kane@usdoj.gov
        Kelly.L.Galvin@usdoj.gov