IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR682 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID JOHNSON, | ) | <u>GOVERNMENT'S RESPONSE IN</u> |
| | ) | <u>OPPOSITION TO DEFENDANTS'</u> |
| Defendant. | ) | <u>MOTIONS TO SUPPRESS SEARCH OF</u> |
| | | <u>RESIDENCE</u> |

Now comes the United States, by and through its counsel, Rebecca C. Lutzko, United States Attorney, and Margaret A. Kane, and Joseph P. Dangelo, Assistant U.S. Attorneys, and hereby responds in opposition to Defendant David Johnson's motion to suppress evidence recovered from the search of his residence.

## I.  BACKGROUND

A series of gas station and retail store robberies occurred from November 27, 2019, through January 25, 2020, across Cuyahoga, Geauga, and Lake counties. On November 27, 2019, an armed male robbed the Sunoco gas station and convenience store located at East 222nd Street, Euclid, Ohio. Witnesses described the suspect as holding a two-toned silver and black handgun. On January 18, 2020, the BP gas station located at 16220 Main Market Street in Parkman, Ohio, was robbed. Store surveillance footage shows the assailant holding a two-toned silver and black handgun. On January 18, 2020, the Dollar General located at 11180 Chardon Road, Chardon, Ohio, was robbed. An employee reported a black male had entered the store brandishing a silver handgun. On January 25, 2020, the Gas Mart, located at 21820 Lakeshore Boulevard, Euclid, Ohio, was robbed by a black male holding a silver handgun.

Law enforcement from multiple jurisdictions conducted a thorough investigation and determined that David Johnson was the individual that committed the above robberies and believed that a KIA SUV was used in many of the crimes. Police determined that Johnson resided at 21920 Miller Avenue in Euclid, Ohio. Officers conducted surveillance on the residence on January 29, 2020. They observed Johnson driving the stolen copper colored Kia outside of the residence. Police conducted mobile surveillance of Johnson driving around the area until police believed that he began to use counter-surveillance tactics to avoid law enforcement. Once police feared Johnson had potentially identified police in the area, they stopped mobile surveillance and maintained physical stationary surveillance on the home.

Johnson drove in the area surrounding the house and circled the block multiple times. He returned to the home approximately five minutes later. Johnson reversed the stolen Kia into the garage. Police took custody of Johnson in the driveway without incident. Police then knocked on the side door of the residence. Johnson's fiancé, KK, answered the door and invited detectives into the house.

KK sat at her kitchen table and had a conversation with Geauga County Sheriff Detective Humar and Lake County Sheriff Detective Zgrebnek. Police explained they were at the home to investigate the stolen vehicle and robberies that had occurred. Police also told KK they wanted to search the residence to look for a firearm to ensure it did not create a risk of harm to her or her small children. KK requested permission to look for a firearm inside the home. KK stated she wanted to cooperate fully and verbally gave detectives consent to search the entire home. KK stated she lived in the home and had access to every room inside of the home. KK signed a written consent form to allow officers to search her home. KK was present with investigators inside of the home and walked freely between rooms as officers searched the residence, vehicle,

and garage area.  Most of the conversation between police and KK was audio recorded and provided to the Defendant in discovery.[1]

After police searched the Miller Avenue residence on January 29th, they reviewed the evidence recovered to the surveillance footage from the multiple robberies.  Police realized that they did not recover a pair of gray Puma sweatpants seen in one of the Euclid robberies.  Detective Dave Carpenter returned to the Miller Avenue residence the following day on January 30th.  KK again granted police verbal and written consent to search her home and retrieve the pair of gray sweatpants.  Defendant Johnson does not contest this second consent search as being involuntary or coerced.

## II.     LAW AND ARGUMENT

The Fourth Amendment permits a search without a warrant if valid consent to search is given. *United States v. Hinojosa,* 606 F.3d 875, 881 (6th Cir.2010); *United States v. Morgan,* 435 F.3d 660, 663 (6th Cir.2006). "The government bears the burden of demonstrating by a preponderance of the evidence, through 'clear and positive testimony,' ... that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Canipe,* 569 F.3d 597, 602 (6th Cir.) (quoting *United States v. Worley,* 193 F.3d 380, 385 (6th Cir.1999)), *cert. denied,* ––– U.S. –––, 130 S.Ct. 655, 175 L.Ed.2d 499 (2009). Whether the government carried this burden is a question of fact to be decided from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Hinojosa,* 606 F.3d at 881; *Canipe,* 569 F.3d at 602.  No single factor is dispositive. *Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041. While knowledge of the

---

[1] The first portion of the conversation between KK and police was not recorded as police did not initially activate the recording due to the hectic nature of arresting Johnson.

3

right to refuse consent is one factor to be taken into account, the government is not required to establish such knowledge to show an effective consent. *United States v. Drayton,* 536 U.S. 194, 206–07, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).

Additionally, it is well settled that an agent's statement that they will obtain a warrant if a person does not consent does not taint a valid consent to search. *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998). In *United States v. Blanco,* 844 F.2d 344, 351 (6th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988), this Court affirmed a district court's ruling that a consent to search was voluntary, even though the investigating agent informed the suspect that if he refused to sign a search to consent form, the agent would attempt to secure a search warrant. *See also, United States v. Watson,* 117 F.3d 1421, 1997 WL 377035, * 3 (6th Cir.)(unpublished disposition), *cert. denied,* 522 U.S. 961, 118 S.Ct. 393, 139 L.Ed.2d 307 (1997)("Notifying a person that a warrant can be obtained does not render consent involuntary unless the threat to obtain the warrant is baseless.")(citing *United States v. White,* 979 F.2d 539, 542 (7th Cir.1992)("When the expressed intention to obtain a search warrant is genuine ... and not merely a pretext to induce submission, it does not vitiate consent.")); *United States v. Evans,* 27 F.3d 1219, 1231 (7th Cir.1994)(consent to search was not tainted because agents informed consentee that they would obtain a warrant if he would not consent); *United States v. Duran,* 957 F.2d 499, 502 (7th Cir.1992); *United States v. Hummer,* 916 F.2d 186, 190 (4th Cir.1990), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670, abrogated on other grounds, 96 F.3d 102 (4th Cir.1996)("The fact that a search warrant is mentioned 'does not necessarily constitute a coercive factor negating consent.' ") (quoting *United States v. Vasquez,* 638 F.2d 507, 528–29 (2nd Cir.1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620 (1981)); *United States v. Kaplan,* 895 F.2d 618, 622 (9th Cir.1990)("consent is not

likely to be held invalid where an officer tells a defendant that he could obtain a search warrant if the officer had probable cause upon which a warrant could issue"); *United States v. Dennis,* 625 F.2d 782 (8th Cir.1980).

The totality of the circumstances show that KK's consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion. KK voluntarily invited officers into her home. She then sat down with two plain-clothes officers in the kitchen of her own home and had a voluntary conversation. At no time did officers raise their voices or threaten KK. In fact, the recording will show that officers had a cordial friendly conversation with KK about her being from a war-torn country and not wanting guns in her home. Police were very upfront and honest that they were searching for a firearm in the home and other evidence relating to the stolen vehicle and robberies. At no time did KK mention that she could not understand officers, was afraid, or did not want to speak to them or give consent. KK also made no mention of being post-partem or that this had any effect on her mindset at the time. The Government fails to see how KK's background as an African immigrant any bearing on her ability has to validly consent as asserted by the Defendant.

Even if testimony is developed that one officer on scene may have told KK that officers would obtain a warrant if she did not consent, this does not taint KK's confession. Case law is clear that officers are permitted to make this statement as long as the threat is not baseless. Testimony will show that had KK not given consent officers would have obtained a state warrant to search the residence and had probable cause to do so.

The totality of the circumstances show that KK provided valid knowing and voluntary consent for police to search the residence of 21920 Miller Avenue. None of the evidence recovered should be suppressed. Defendant's motion is without merit and should be denied.

By:   /s/ Margaret A. Kane
Margaret A. Kane (OH: 0082084)
Joseph P. Dangelo (OH: 0079898)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3624/5499
(216) 522-7458 (facsimile)
Margaret.Kane@usdoj.gov
Joseph.Dangelo@usdoj.gov